AUSAs: James G. Mandilk; Kevin Grossinger

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **25 MAG 119** |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TERRY BROOKS,<br><br>                    Defendant. | <u>SEALED COMPLAINT</u><br><br>Violations of 18 U.S.C. § 922(g)<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

    MICHAEL MCCAFFREY, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
**(Possession of Ammunition After a Felony Conviction)**

    1.    On or about November 12, 2023, in the Southern District of New York and elsewhere, TERRY BROOKS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed ammunition, to wit, one 9mm Speer Luger cartridge casing, and the ammunition was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

### COUNT TWO
**(Possession of Firearms After a Felony Conviction)**

    2.    On or about August 14, 2024, in the Southern District of New York and elsewhere, TERRY BROOKS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed firearms, to wit, one KelTech P17 .22 caliber pistol, one Colt .45 caliber revolver, one Heritage Rough Rider .22 caliber revolver, and one Cleveland AK74 5.45x39mm assault rifle, and the firearms were in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

### COUNT THREE
**(Possession of Firearm After a Felony Conviction)**

    3.    On or about August 21, 2024, in the Southern District of New York and elsewhere, TERRY BROOKS, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a loaded black Ruger EC9S 9mm caliber pistol, and the firearm was in and affecting commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

### **BROOKS's Prior Felony Conviction**

3.   Based on my review of documents and reports, including criminal history records for TERRY BROOKS, the defendant, I have learned the following, in substance and in part: On or about June 19, 1996, BROOKS was convicted of first-degree robbery, in violation of New York Penal Law Section 160.15, and was sentenced to eight to sixteen years of imprisonment. BROOKS served approximately ten years and two months in prison for this offense.

### **The November 12, 2023 Shooting**

4.   Based on my review of surveillance video footage from November 12, 2023 from the vicinity of several locations in the Bronx — 752 E. Tremont Avenue; 738 E. Tremont Avenue; 517 E. 178th Street; 502 E. 180th Street; 510 E. 180th Street; 4371 Third Avenue; 519 E. 180th Street; and 1974 LaFontaine Avenue — I have learned the following, in substance and in part:

a.   On or about November 12, 2023, at approximately 9:52 p.m., a man wearing a distinctive tan and black coat and a black hat (the "Shooter"), together with a female associate (the "Associate"), left a particular hotel room (the "Hotel Room") at a particular hotel on E. Tremont Avenue in the Bronx (the "Hotel"). The Shooter has subsequently been identified as TERRY BROOKS, the defendant (*see infra* ¶ 5).

b.   At approximately 9:53 p.m., the Shooter and the Associate walked out of the Hotel to a red Toyota Corolla sedan (the "Corolla") that was parked outside the Hotel. The Shooter entered the driver's seat of the Corolla, and the Associate entered the front passenger seat. The Corolla drove westbound on E. Tremont Avenue. At approximately 9:55 p.m., the Corolla drove northbound on Third Avenue. At approximately 9:59 p.m., the Corolla arrived at a deli and smoke shop on the corner of E. 180th Street and Bathgate Avenue in the Bronx, New York (the "Smoke Shop"). The Corolla double-parked on E. 180th Street near the Smoke Shop. At approximately 10:00 p.m., the Shooter entered the Smoke Shop. At approximately 10:03 p.m., the Shooter approached the register of the Smoke Shop to make a purchase. A man wearing a black jacket and baseball hat (the "Man") entered the Smoke Shop. The Man appeared to brush up against, and exchange words with, the Shooter.

c.   At approximately 10:04 p.m., the Shooter exited the Smoke Shop. The Shooter walked eastbound on E. 180th Street and approached the Corolla. At approximately 10:04 p.m., the Man exited the Smoke Shop and walked toward the Shooter. Based also on an eyewitness report, the Man and the Shooter appeared to exchange words. The Man turned and walked away from the Shooter, walking westbound on E. 180th Street.

d.   At approximately 10:05 p.m., the Shooter reached into his waistband, walked toward the Man, and fired a round from a firearm, causing a muzzle flash (the "Shooting"). The round struck a bystander wearing a hooded jacket standing outside the front door to the Smoke Shop (the "Victim"). The Victim fell to the ground.

2

e.  Based also on an eyewitness report, at approximately the same time, the Shooter, holding the firearm in his right hand, walked eastbound on E. 180th Street. The Shooter entered a nearby restaurant and appeared to exchange words with someone in the restaurant. The Shooter then turned and walked to the Corolla. Shortly thereafter, the Associate exited the restaurant and walked to the Corolla. The Shooter entered the driver's seat of the Corolla, and the Associate entered the front passenger seat. At approximately 10:06 p.m., the Corolla departed, heading eastbound on E. 180th Street. At approximately 10:11 p.m., the Corolla parked in front of the Hotel, and the Shooter and the Associate exited the Corolla. At approximately 10:12 p.m., the Shooter and the Associate entered the Hotel. At approximately 10:13 p.m., the Shooter and the Associate entered the Hotel Room.

f.  Between approximately 9:52 p.m. (when the Shooter leaves the Hotel Room prior to the Shooting) and approximately 10:13 p.m. (when the Shooter enters the Hotel Room following the Shooting), the Shooter is seen on the surveillance video footage wearing the same distinctive tan and black coat and the black hat.

g.  Based also on NYPD records and body-worn camera footage, at approximately 10:07 p.m., a 911 call was made to report the Shooting. Beginning at approximately 10:08 p.m., NYPD officers arrived at the scene of the Shooting, where they provided medical attention to the Victim. At approximately 10:09 p.m., officers recovered one shell casing (the "Shell Casing") on the sidewalk in front of the Smoke Shop.

## Identification of BROOKS

5.  Based on my involvement in the investigation, including my conversations with other law enforcement officers and my review of NYPD records, I have learned that law enforcement officers identified the Shooter as TERRY BROOKS, the defendant. In particular, I have learned the following, in substance and in part:

a.  Surveillance video footage from the Hotel showed that the Shooter and the Associate left the Hotel Room approximately 13 minutes before the Shooting and re-entered the Hotel Room approximately 8 minutes after the Shooting.

b.  Based on NYPD records and records from the Hotel, I know that the person who checked into the Hotel Room was a female who had provided a New York State photo identification bearing a particular name ("Woman-1"), and that a male by the name of "Terry Brooks" was also listed on the Hotel's registration card, *i.e.*, that "Terry Brooks" was an authorized occupant of the Hotel Room. Based on my review of the surveillance video from the vicinity of the Shooting on the night of the Shooting, I know that Woman-1's appearance is consistent with the appearance of the Associate who accompanied the Shooter on the night of the Shooting.[1]

c.  The license plate of the Corolla is visible on surveillance video footage from the Hotel and the vicinity of the Shooting. Based on my review of NYPD records, I know that, on

---

[1] In addition, based on my review of call detail records from a cellphone service provider, I know, in substance and in part, that for the period from January 1, 2024 through May 29, 2024, phones associated with BROOKS and Woman-1 exchanged 298 successful phone calls (*i.e.*, in which an individual answered the phone call).

3

or about March 12, 2023, BROOKS received two moving violations while driving the Corolla, and that the Corolla is registered to a woman who lives in Brooklyn, New York ("Woman-2").[2] As described *infra* ¶¶ 13–15, on or about August 14, 2024, NYPD officers executed a search warrant at the Brooklyn residence where Woman-2 resides, and recovered two firearms, together with firearm parts and ammunition, from the main area of the basement of that residence.

### The November 20, 2023 Arrest of BROOKS

6. Based on my conversations with other law enforcement officers, my review of NYPD records and body-worn camera footage, and my review of other records, I have learned the following, in substance and in part: On or about November 20, 2023, TERRY BROOKS, the defendant, was arrested by the NYPD in the Bronx in connection with the Shooting. He was charged with attempted second-degree murder, a class B felony in violation of NYPL Sections 110 and 125.25(01), among other charges.

### Investigation Into Purchases of Firearm Parts from Online Retailers

7. Based on my review of records from a retailer that sells firearm components online ("Seller-1"), I have learned the following, in substance and in part:

   a. A user account with Seller-1 has a particular username ("tebro-23") ("User-1") that is associated with a particular email address ("Email Address-1") and a particular phone number ("Phone Number-1"). The "full name" associated with the User-1 account is "Terry Brooks."

   b. Between on or about July 25, 2023 and on or about August 3, 2024, User-1 purchased at least 58 firearm parts for delivery to "Terry Brooks" at a particular residential address in Brooklyn ("Address-1").

   c. Between on or about May 5, 2024 and August 2, 2024, at least 8 of the 58 firearm parts purchased from Seller-1 were purchased by User-1 using a particular Internet Protocol address, which based on records provided by the internet service provider, I know was subscribed at the time to Address-1.[3]

   d. Between on or about December 10, 2023 and on or about August 3, 2024, at least 32 of the 58 firearm parts purchased from Seller-1 were purchased by User-1 using a particular Internet Protocol address, which based on records provided by the internet service

---

[2] In addition, based on my review of NYPD records, I know, in substance and in part, that on or about September 4, 2023, Woman-2 filed a missing person report for BROOKS, and that such report stated that BROOKS was last observed driving a red Toyota Corolla with a license plate number matching that of the Corolla from the surveillance video footage.

[3] "Every device on the Internet is identified by a unique number" called an Internet Protocol address, which is used "to route information between devices, for example, between two computers." *United States v. Ulbricht*, 858 F.3d 71, 83–84 (2d Cir. 2017) (internal quotation marks omitted).

4

provider, I know was subscribed at the time to a particular residential address in the Bronx ("Address-2").

   e. Between on or about November 9, 2023 and on or about July 26, 2024, at least 15 of the 58 firearm parts purchased from Seller-1 were purchased by User-1 using a particular Internet Protocol address, which based on records provided by the internet service provider, I know was subscribed at the time to the Hotel.

   f. At least 18 of the 58 firearm parts purchased from Seller-1 by User-1 were assigned shipment tracking numbers that matched the shipment tracking numbers located on the exterior of packages later recovered from or photographed by officers at Address-2 (*see infra* ¶¶ 11–12).

   g. At least 7 of the 58 firearm parts purchased from Seller-1 by User-1 are compatible with (*i.e.*, can be installed on or are interchangeable with parts on) at least one of the firearms recovered from Address-2 (*see infra* ¶ 10). Moreover, at least 2 of those 7 firearm parts were assigned shipment tracking numbers that matched the shipment tracking numbers located on the exterior of packages later recovered from or photographed by officers at Address-2 (*see infra* ¶ 11–12).

  8. Based on my review of records from a retailer that sells firearm components online ("Seller-2"), I have learned the following, in substance and in part:

   a. A user account with Seller-2 has a particular username ("Terry") ("User-2"). The email address associated with User-2 is Email Address-1, which matches the email address associated with User-1. The shipping information associated with User-2 is Address-1 and Address-2, the former of which matches the shipping information associated with User-1. A phone number associated with User-2 is Phone Number-1, which matches the phone number associated with User-1.

   b. Between on or about November 10, 2023 and on or about January 2, 2024, User-2 purchased at least 5 firearm parts for delivery to "Terry" at Address-1.

   c. On or about November 10, 2023, 3 of the 5 firearm parts purchased from Seller-2 were purchased by User-2 using a particular Internet Protocol address, which based on records provided by the internet service provider, I know was subscribed at the time to the Hotel.

## The Recovery of Eight Firearms, Firearm Parts, and Ammunition
## On or About August 14, 2024

  9. Based on my involvement in the investigation, including conversations with other law enforcement officers, and my review of NYPD and court records, I have learned, in substance and in part, that on or about August 12, 2024, the Supreme Court of the State of New York (Hon. Rhonda Tomlinson) issued two search warrants, authorizing the search of Address-1 and Address-2 (the "Search Warrants"). On or about August 14, 2024, NYPD officers executed the Search Warrants by searching Address-1 and Address-2.

5

*Address-2 (Bronx Apartment)*

10. At Address-2, a small one-bedroom apartment in an apartment building in the Bronx, officers recovered six firearms ("Firearm-1" through "Firearm-6"), multiple calibers of ammunition, and firearm parts. Firearm-1 through Firearm-6, the ammunition, and firearm parts all were recovered from the living room. Firearm-1 through Firearm-6 are more particularly described below:

    a. <u>Firearm-1</u>: A KelTech P17 .22 caliber pistol (recovered on computer desk shelf).

    b. <u>Firearm-2</u>: A Colt .45 caliber revolver (recovered on couch behind cushion).

    c. <u>Firearm-3</u>: A Heritage Rough Rider .22 caliber revolver (recovered in laptop bag in corner between shelf and wall).

    d. <u>Firearm-4</u>: A Cleveland AK74 5.45x39mm assault rifle (recovered on couch).

    e. <u>Firearm-5</u>: A tan-black Polymer80 9mm privately made pistol (*i.e.*, a "ghost gun") (recovered inside TV stand's top-right drawer).

    f. <u>Firearm-6</u>: A non-operable green Polymer80 9mm ghost gun (recovered inside TV stand's second drawer on right).

11. Officers also recovered or photographed from the living room of Address-2:

    a. Approximately fourteen packages addressed to BROOKS, with Address-1 (*i.e.*, the Brooklyn address) listed as the shipping address;

    b. One piece of mail addressed to BROOKS, with Address-2 listed as the mailing address;

    c. A New York State identification card in the name of BROOKS;

    d. Four empty boxes addressed to BROOKS, with Address-1 listed as the shipping address;

    e. A court document naming "Terry Antonio Brooks" as a defendant; and

    f. Numerous articles of men's clothing.

12. Based on my review of NYPD records, I know that the NYPD Police Laboratory Firearms Analysis Section concluded, following a microscopic analysis, that the Shell Casing recovered after the Shooting was discharged by Firearm-5.

*Address-1 (Brooklyn Residence)*

13. At Address-1, a three-bedroom, three-story residence in Brooklyn, NYPD officers recovered two additional firearms ("Firearm-7" and "Firearm-8"), multiple calibers of ammunition, and firearm parts. Firearm-7 and Firearm-8, the ammunition, and the firearm parts all were recovered from the main area of the basement. Firearm-7 and Firearm-8 are more particularly described below:

    a. <u>Firearm-7</u>: A NR Davis & Sons sawed off shotgun (recovered on top of shoe rack, inside grocery bag).

    b. <u>Firearm-8</u>: A Smith & Wesson Magnum .357 caliber revolver (recovered under work bench, inside box).

14. Officers also recovered or photographed from the main area of the basement of Address-1:

    a. A package addressed to "Terry Brooks," with Address-1 listed as the mailing address (recovered from top of work bench);

    b. A piece of mail addressed to "Terry Antonio Brooks," with Address-2 (*i.e.*, the Bronx apartment) listed as the mailing address (recovered from top of work bench);

    c. A laptop (recovered inside box);

    d. Multiple photographs of Woman-2 and BROOKS together;

    e. A piece of paper titled "Terry's favorite stories";

    f. A New York novelty license plate reading "Terry"; and

    g. Numerous articles of men's clothing.

15. Officers further photographed, from the closet adjacent to the main area of the basement of Address-1, a tan and black coat appearing to match the distinctive tan and black coat worn by the Shooter on the night of the Shooting (*see supra* ¶ 4).

### The August 21, 2024 Arrest of BROOKS and the Recovery of Another Firearm

16. Based on my involvement in the investigation, including conversations with other law enforcement officers, my review of NYPD records and body-worn camera footage, my review of court records, and my participation in the arrest of TERRY BROOKS, the defendant, on or about August 21, 2024, I have learned the following, in substance and in part:

    a. On or about August 19, 2024, the Supreme Court of the State of New York (Hon. Joanne D. Quinones) issued a warrant authorizing NYPD officers and Homeland Security Investigations ("HSI") agents to use a cell-site simulator to determine the location of a phone that, based on their investigation, appeared to be used by BROOKS.

    b. On or about August 20, 2024, a bench warrant for BROOKS was issued by Bronx County Supreme Court (Hon. Kim M. Parker) for BROOKS's failure to appear for a court appearance on August 20, 2024 related to the criminal case against BROOKS in connection with the Shooting.

    c. On or about August 21, 2024, officers went to the Hotel, where they believed, based on the returns from the cell-site simulator, BROOKS to be located. Officers knocked on the hotel room door where they believed BROOKS to be located, and Woman-1 exited the hotel room. Officers entered the hotel room through the door that remained unlocked and opened after Woman-1 exited. BROOKS was in the bathroom inside the hotel room. Officers arrested BROOKS. Officers observed a firearm in plain view on a nightstand in the hotel room ("Firearm-9") and seized it. Firearm-9 is a black Ruger EC9s 9mm pistol containing five rounds of ammunition, one of which was chambered.

    d. After BROOKS was handcuffed, an officer ("Officer-1") said to another officer ("Officer-2"), in substance and in part, "there was a clear line of sight from the bed to the front door where we could have been shot at." When Officer-1 made this statement, he was standing and facing Officer-2 and was not facing BROOKS. At the time of this statement, BROOKS was sitting on the side of the bed. BROOKS then said, in substance and in part, that the "gun isn't to shoot cops, it's for my protection."

## Interstate Commerce

  17. Based on my communications with a Special Agent from ATF who is familiar with the manufacturing of firearms, I know that Firearm-1, Firearm-2, Firearm-3, Firearm-4, Firearm-9, and the Shell Casing were manufactured outside New York State.

  WHEREFORE, I respectfully request that a warrant be issued for the arrest of TERRY BROOKS, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

           /s/ Michael McCaffrey (by GS w/ permission)
           MICHAEL MCCAFFREY
           DETECTIVE
           NEW YORK CITY POLICE DEPARTMENT

Sworn to me through the transmission of
this Affidavit by reliable electronic
means (telephone), pursuant to Federal Rules
of Criminal Procedure 41(d)(3) and 4.1  this
14th day of January, 2025

_____
Hon. Gary Stein
United States Magistrate Judge
Southern District of New York